William D. Hyslop
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MIGUEL NAVARRETE,<br><br>Defendant. | 1:19-CR-02058-SMJ-1<br><br>United States' Response to Defendant's Motion for Release |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, submits the following Response to Defendant's Motion for Release. (ECF No. 86). The United States respectfully submits the Court should deny the Defendant's motion and detain the Defendant pending trial.

United States' Response to Defendant's Motion for Release – 1

## I. Introduction

On November 19, 2019, the Defendant was indicted by a grand jury sitting in the Eastern District of Washington of the sole count of Carjacking, in violation of 18 U.S.C. §§ 2119, 2. (ECF No. 1). On December 4, 2019, the Defendant made an initial appearance before the Court in Yakima, Washington. The United States requested the Defendant's detention at that time. (ECF No. 14). At the initial appearance, the Defendant requested a detention hearing, which the Court set for December 9, 2019. (ECF No. 17). At the detention hearing, the Defendant waived his right to a detention hearing but reserved the right address detention at a later date should circumstances change. (ECF Nos. 39 and 42).

On March 19, 2020, the Defendant filed a motion to reopen the detention hearing and requested the Defendant's release. (ECF No. 86). Attached to this motion were letters of support from various family members of the Defendant and a Court Order from a matter before the Southern District of New York ("SDNY"). (ECF No. 87-1).

For the reasons set forth herein, the United States submits that the Defendant is a demonstrated risk of flight and a risk to the safety of the community. Accordingly, the United States requests the Court deny the Defendant's motion and remand the Defendant to the custody of the United States Marshal's Service pending trial.

## II. The Facts of the Instant Case

The Defendant has been charged in the Eastern District of Washington with one count of Carjacking, in violation of 18 U.S.C. §§ 2119, 2.

//
//

United States' Response to Defendant's Motion for Release – 2

### III.    Bail Reform Act - 18 U.S.C. § 3142(e)

The Bail Reform Act governs detention of a defendant pending trial and provides that a person should be released pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The government retains the ultimate burden of persuasion on both issues.  To detain the Defendant, the Court must be convinced either (1) by clear and convincing evidence that the defendant presents a danger to the community, or (2) by a preponderance of the evidence that he is a flight risk. *United States v. Mercedes*, 254 F2d. 433, 436 (2d Cir. 2001).

The circumstances in this case establish by clear and convincing evidence, that no condition or combination of conditions could be fashioned to reasonably assure the safety of the community.  Furthermore, the facts and circumstances in this case establish by a preponderance of evidence that the Defendant is a flight risk and continued detention is appropriate.  When considering the factors outlined in 18 U.S.C. § 3142(g), the factors strongly support a conclusion that the Defendant should be detained pending trial.

*1)    Nature and Circumstances of Offense*

First, the nature and circumstances of the offense charged are exceptionally serious. The Defendant was indicated for being one of six[1] individuals involved in a violent carjacking.  Inextricably intertwined in the facts is that the Defendant, a documented gang member, was associating with other documented gang members who proceed to physically attack the victim.  During this prolonged attack, the victim was stripped of his sneakers, cell phone, and vehicle.  The violent nature of

---

[1] One individual involved is unnamed.

United States' Response to Defendant's Motion for Release – 3

this offense highlights the risk to the community's safety should the Defendant be released.  This factor favors detention.

        2) *Weight of the Evidence*

The weight of the evidence against Defendant is strong. While case law dictates that this prong is the "least important" factor, the Court must "consider the evidence in terms of the likelihood that [Defendant] will pose a danger" as well as whether the evidence is strong and the penalties sufficient to cause the Defendant to flee. *Hir*, 517 F.3d at 1090.  This factor favors detention.

        3) *Nature and Seriousness of Danger to the Community*

The nature and seriousness of danger to the community that would be posed by Defendant's release also supports detention.  When considering the totality of the circumstances, the Defendant poses a significant risk to the safety of the community.

Here the Defendant's criminal history establishes by clear and convincing evidence that the Defendant is a risk to the safety of the community.  Since the age of 13, the Defendant has engaged in a multitude of criminal acts.  Some of the Defendant's convictions are misdemeanors or gross misdemeanors.  Many of the Defendant's criminal convictions are serious felonies.  At the age of 15, the Defendant was convicted of a controlled substances violation and possession of a stolen firearm.  (ECF No. 16, pg. 5).  Approximately one year later, at the age of 16, the Defendant was convicted of Drive by Shooting and Second Degree Unlawful Possession of a Firearm.  (ECF No. 16, pg. 5). Approximately eight months following the conviction for Drive by Shooting, the Defendant was again arrested for Second Degree Unlawful Possession of a Firearm (he was subsequently convicted in June 2009).  (ECF No. 16, pg. 6).  After being convicted in June 2009, the Defendant committed, for a third time, Second Degree Unlawful

United States' Response to Defendant's Motion for Release – 4

Possession of a Firearm, resulting in his conviction in December 2009. ECF No. 16, pg. 16). Subsequently, in May 2011 and at the age of 19, the Defendant was convicted, for the fourth time, of Second Degree Unlawful Possession of a Firearm. (ECF No. 16, pg. 7). In February 2014, the Defendant was convicted of First Degree Unlawful Possession of a Firearm and Aiming or Discharging Firearms. (ECF No. 16, pg. 8). This conviction resulted in the Defendant's confinement to the Washington State Department of Corrections for 47.5 months. Following his release from the state prison system in approximately 2016, the Defendant engaged in minor misconduct by driving with a suspended license. However, in June 2017 (conviction in November 2019), the Defendant was charged with a second Drive by Shooting. (ECF No. 16, pg. 9). In addition to the Drive by Shooting charge, the two charges of Second Degree Assault with a Deadly Weapon were dismissed. *Id.*

The above recitation of criminal convictions are those that highlight the most serious and violent in the Defendant's history. That said, those convictions are not the sum total of the Defendant's criminal convictions or contacts with law enforcement. Rather, the pre-trial services report reflects a Defendant, since the age of 13, willingly disregarding the law on numerous levels, with increasing severity. Such a defendant is a risk to the safety of the community. Accordingly, the Court should find, based upon clearing and convincing evidence, that the Defendant should remain detained pending trial.

    *4)  Characteristics of the Defendant*

The particulars of the Defendant's character, financial resources, past conduct, and criminal history, weigh heavily in favor of detention. The Defendant is a known gang member, who at the time of the commission of this offense, was associating with at least three other gang members. Most concerning, however, is

United States' Response to Defendant's Motion for Release – 5

the significant criminal history and law enforcement contacts, as noted above, the Defendant has accumulated over years.

That said, the Defendant's risk to the safety of the community is not the only basis warranting detention. The Defendant's unwillingness or inability to appear before other courts and to follow the court's orders, is illustrative of the Defendant's ability in this case to comply with this Court's orders. Beginning in 2007, the Defendant has repeatedly failed to appear for hearings requiring the issuance of arrest warrants. Since 2007, the Defendant has failed to appear for hearings on thirty-two (32) occasions, failed to comply on six (6) occasions, and failed to surrender to serve a jail sentence on two (2) occasions; resulting in the issuance of over 14 warrants.[2] While the Defendant indicates that he will have transportation to future court hearings that is simply not a sufficient assurance for the Court to rely on. The Defendant's history is the best indicator of the Defendant's likelihood of future appearance at court hearings. The Defendant's history proves by the preponderance of evidence that the Defendant is a flight risk and necessitates his continued detained pending trial.

Moreover, the basis that the Defendant's ties to family and the community warrants his release is misplaced. Nothing today is different (aside from new children) than in the past for this Defendant. In the past, he had the same ties: the same wife; the same mother and father; the same friends; the same job opportunities; yet all of these things, which the Defendant relies on today to form

---

[2] The exact number of warrants is indeterminate because in one case, the Defendant failed to appear on thirteen (13) occasions, resulting in numerous warrants being issued. However, the pre-trial services report does not detail for this particular case how many warrants were issued for failure to appear. (ECF No. 16, pg. 7).

United States' Response to Defendant's Motion for Release – 6

the basis for his release, did not deter the Defendant from continuing to engage in criminal activities and failing to appear for hearings. Such reliance will likely, based upon the Defendant's past history, result in a danger to the community and non-appearances before this Court.

Furthermore, given the Defendant's failure to appear history, in the event the Defendant did not appear for a hearing and a warrant was issued, law enforcement officers would continue to be placed at risk to apprehend him. While the Defendant voluntarily presented himself to the Special Weapons and Tactics (SWAT) officers on the day of his arrest, a review of recorded jail phone calls indicates that at a point prior to his surrender the Defendant contemplated hiding in the attic of the residence to avoid capture.[3] This conduct places the officers executing the warrant and those community members in the area at the time of the execution in danger. Accordingly, the risk to the community and risk of flight warrants the Defendant's continued detention. Accordingly, the Court should deny the Defendant's motion.

### III.     Strict Release Conditions are Not Sufficient

The Defendant asserts the Court could impose conditions to reasonably assure the safety of the community and appearance at future court hearings. However, the Defendant's history belies that assertion. As the Ninth Circuit took time to point out, any release conditions contain "an Achilles' heel ... virtually all of them hinge on the defendant's good faith compliance." *Hir*, 517 F.3d at 1092 (internal citations omitted). The Ninth Circuit also noted that release conditions "can be too easily circumvented or manipulated." *Id.* The effectiveness of the

---

[3] Discovery Audio Recording, Recorded Jail Phone Call, 572094_003985_12-06-2019_231036_1-509-305-XXX9 (complete number redacted for purposes of filing), Timestamp 14:30 through 15:33.

United States' Response to Defendant's Motion for Release – 7

release conditions in this case depend entirely on the good faith compliance of the Defendant. The history and characteristics of the Defendant suggest that compliance will not follow no matter the release conditions imposed. Accordingly, the Court should deny the Defendant's motion as the risk of non-appearance or danger to the community remains high, regardless of any conditions the Court could impose.

Moreover, the Defendant asserts his continued detention raises potential issues within the context of the Fifth, Sixth, and Eighth Amendments of the United States Constitution. The continued detention of the Defendant that has a history of flight, a history of violent criminal acts, and is not of a "frail" health conditions does not fall within the gambit of Eight Amendment concerns. Rather the analysis should be conducted pursuant to the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979). Considering the Fourteenth Amendment, the Defendant's claims are still without merit. In order for a Defendant to prevail under this analysis, the Defendant must show that the restriction or condition accompanying the pre-trial detention are "imposed for the purpose of punishment" not simply that it was incident to some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. at 538.

Moreover, assuming *arguendo* that "the Eight Amendment forbids placing a frail individual at risk of death in the absence of any danger to the community or serious risk of flight," the Defendant's motion still should fail. (ECF No. 86, pg. 5, ln. 8-10). Simply being of "frail" health, which there is no evidence before the Court that the Defendant is, does not grant an individual a "get out of jail free" card. Rather, it is one of many factors that the Court should weigh in its detention analysis. Here, the factors warrant the continued detention of the Defendant, particularly in light of the Defendant's flight risk and risk to the safety of the community. Furthermore, while the United States recognizes the on-going

United States' Response to Defendant's Motion for Release – 8

national emergency, the circumstances highlighted in the SDNY's decision are distinct from the circumstances present in the Yakima County Jail.[4] There is a substantial difference between the criminal history and record of the defendant in the SDNY case and the criminal history and record of Mr. Navarrete. As noted by the SDNY court, the defendant in that matter did not "have a violent background: no prior convictions involved violent conduct or gun charges." (ECF No. 87-1, pg. 9). In comparison, the Defendant here has multiple convictions for serious and violent felonies as well as multiple convictions for the unlawful possession of a firearm. Accordingly, when weighing the factors in this case, the continued detention of the Defendant is not punitive in nature. Rather, the detention is appropriate based upon the careful analysis of the Defendant's risk of flight and risk to the safety of the community; both of which are abundantly present in this case.

Similarly, the Defendant's argument that continued detention may raise Fifth and Sixth Amendment issues is also unpersuasive. The Defendant has a right to counsel. The continued detention of the Defendant does not deprive the Defendant of the opportunity to meet with counsel. The United States is unaware of any meeting restrictions being imposed between inmates and attorneys at this time at the Yakima County Jail.[5] Therefore, the Defendant and counsel can continue to meet. However, in the event a temporary suspension of in-person meetings were to

---

[4] The United States also notes the SDNY court also based the release decision on a change in the strength of the Government's evidence.

[5] https://www.yakimacounty.us/592/Visiting-the-Jail, last reviewed March 23, 2020 at 9:22 a.m. The Yakima County Jail is encouraging video teleconferences between inmates and attorneys, however, at the time of this response, the Jail is not restricting in-person attorney meetings.

United States' Response to Defendant's Motion for Release – 9

occur, the Defendant would still be able to maintain contact with his attorney. The Yakima County Jail is equipped with both telephones and video teleconferencing, which both the Defendant and counsel could avail themselves of.

In this matter, the risk of flight and the danger to the safety of the community outweigh the basis on which the Defendant relies for his release.

### IV.  Conclusion

Pursuant to 18 U.S.C. § 3142(e), the Defendant is a flight risk and a danger to the community. The totality of the facts of this case substantiate the United States' position. Accordingly, the United States requests the Court maintain the detention of the Defendant and deny his motion for release.

Dated: March 23, 2020.

William D. Hyslop
United States Attorney


*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Troy Lee:  troylee@troyleelaw.com

>               *s/ Patrick J. Cashman*
>               Patrick J. Cashman
>               Assistant United States Attorney