Troy J. Lee
LEE & ASSOCIATES
117 N. 3rd Street #201
Yakima, WA 98901
(509) 452-6235
Fax: (509) 452-2518

Attorney for Defendant
MIGUEL NAVARRETE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  1:19CR2058-SMJ-1 |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| vs. | |
| MIGUEL NAVARRETE, | |
| Defendant | |

TO:   JOSEPH HARRINGTON, ACTING UNITED STATES ATTORNEY;
      PATRICK CASHMAN, ASSISTANT UNITED STATES ATTORNEY

Defendant, Miguel Navarrete, by and through his attorney of record, Troy J. Lee of Lee & Associates, submits the following sentencing memorandum:

**I. BASE OFFENSE LEVEL & ENHANCEMENTS**

A. <u>Base Offense Level and Enhancements.</u>

Mr. Navarrete agrees with the probation officer's calculation of the base offense level of 20. However, Mr. Navarrete objects to the two-level adjustment under paragraph 50, pursuant to USSG §2B3.1(b)(5).

USSG §2B3.1(b)(5) provides for a two-level enhancement if a person was "physically restrained" to facilitate the commission or escape from the crime. USSG §2B3.1(b)(5) (2018). The Guidelines define that term as the "forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K).

Despite that, the Ninth Circuit previously held that a bank robber could physically restrain a victim if there were a "sustained focus" on the restrained person, that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere. *See United States v. Parker,* 241 F.3d 1114, 1118-1119 (9th Cir. 2001).

That natural incongruence between the guidelines and that holding was further explored in *United States v. Albritton*, 622 F.3d 1104 (9th Cir. 2010). In that case, the Court considered cases in which courts have grappled with that issue and concluded that a "sustained focus" exists when a bank robber directs a victim into a room or orders a victim to walk somewhere else. *Id.* Similarly, a "sustained focus" exists when, at gunpoint, a victim is ordered into a back room, *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir.1998), or repeatedly forced to get down and get up, *United States v. Thompson*, 109 F.3d 639, 641 (9th Cir.1997). However, it is not enough if the defendant briefly points a gun at a victim and orders her once to get down. *Parker*, 241 F.3d at 1118-19 (explaining that Congress must have meant something more, because otherwise "nearly all armed bank robberies will presumably involve such acts").

The facts in this case are like those in *Parker*. In this case, the allegations were that a co-defendant pointed a handgun at the victim and twice ordered him out of the car. He complied with those commands and his car was taken. Unlike cases involving a

DEFENDANT'S SENTENCING
MEMORANDUM                    2

"sustained focus," he was not ordered to go to another area or room or even given repeated alternating commands. If the act of ordering an individual out of a car does constitute "physical restraint", then this would also be a similar situation as in *Parker*—all "carjacking" cases would naturally involve such restraint.

Thus, Mr. Navarrete requests that the Court compute the offense level at a 26. Such a calculation, when coupled with the offender score, results in a guideline range of 110-137 months.

B.  Factual Objections

Mr. Navarrete objects specifically to paragraph 17 of the presentence report in that he was named as one of the three individuals who initially went up to the victim's car and assaulted the victim. However, he does admit that he was involved in the incident and was aware of what was occurring at the time.

The complication is due to this case involving several witnesses, in addition to the victim. Through the numerous interviews and recordings, it was difficult to ascertain Mr. Navarrete's level of involvement, although he was admittedly there and lent support to others and was aware of the incident. For example, in the initial 911 call from the victim, as well as at least one interview, he did not name Mr. Navarrete. In that call, he named "Shooter", "Grinch," and "Chato," who were subsequently identified as Jose Salas, Oscar Trevino, and Rolando Vargas.

There is support for that confusion. For example, as recited in paragraph 28 of the PSR, during one of the initial interviews, the victim stated he could not specifically see Mr. Navarrete but believed that he had participated in the assault. Furthermore, there

DEFENDANT'S SENTENCING
MEMORANDUM                                    3

was no mention from other witnesses regarding Mr. Navarrete's involvement with the assault itself.

However, resolution of that factual issue does not affect the offense level in this case; nor is there a request for any departure based on the level of participation.

## II. DEPARTURES

Pursuant to the plea agreement, there are no requests for downward departures.

## III. 18 U.S.C. § 3553(a)

Mr. Navarrete is asking that the court vary from the guidelines and impose a term of incarceration of five years, followed by a five-year term of supervised release.

Such a sentence will serve the goals of 18 U.S.C. § 3553(a) in this case. Under 18 U.S.C. § 3553(a), the Court must consider the following factors when imposing a sentence:

>	(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>	(2) the need for the sentence imposed to:
>		(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>		(B) to afford adequate deterrence to criminal conduct;
>		(C) to protect the public from further crimes of the defendant; and
>		(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>	(3) the kinds of sentences available;
>	(4) the advisory guideline range;
>	(5) any pertinent policy statements issued by the Sentencing Commission;
>	(6) the need to avoid unwarranted sentencing disparities; and
>	(7) the need to provide restitution.

18 U.S.C. §3553(a).

### A. Nature and Circumstances of the Offense

This case involved a "car-jacking" of the victim's car as well as an assault.

As such, it is a serious offense and it is not being argued to the contrary. However, as it does encompass egregious behavior and public safety concerns, it should be noted that this case did not involve a random target. Instead, although somewhat unclear through statements to law enforcement, the incident occurred either because of the victim jokingly crashing a car belonging to the father of another individual or had to do with the theft of a firearm. Counsel is not attempting to minimize the behavior, other than make it clear that this incident did not target a random, entirely innocent, victim.

  B. <u>History and Characteristics of the Defendant</u>

Mr. Navarrete had a troubled childhood, which helps explain his involvement with gangs. He was very upfront with the probation officer during his interview, relaying incidents involving abuse, as well as a lack of parental figures in his life. Because of that, he turned to drug abuse (beginning at 10 years old) and according to his wife, was a member of a gang starting at that same age,

Mr. Navarrete does have a support system once he is out of jail. He has a wife, Llesenia Farias, with whom he has been in a relationship for 15 years, who is standing by his side. He has five children with her. Thus, he has all the reason in the world to remain out of custody and take advantage of services offered to him through supervised release. Ms. Farias indicated that at one point, Mr. Navarrete was doing well when he was on DOC supervision, although that supervision did not last long.

Mr. Navarrete does have a history of taking advantage of services offered to him. He did obtain a GED and took college courses and earned certificates when in custody. Once out, he continued to take courses, although was not able to finish that degree.

DEFENDANT'S SENTENCING
MEMORANDUM     5

### C. Necessity of the Sentence

A 62-month sentence followed by three years of supervised release is sufficient but not more than necessary to effectuate the purposes of the guidelines.  It allows Mr. Navarrete to again take advantage of treatment and classes while confined, protects the community, and provides for substantial supervision once released with strict conditions.

### D. Need to Avoid Sentencing Disparities

A 62-month sentence does not create a sentencing disparity within this case or other similarly situated defendants.  Mr. Navarrete would spend the better part of five years in prison, as well as be monitored for 3 years.  If he were to violate supervision, the Court could sentence him to an additional three years of custody.

There are four co-defendants in this case (Oscar Trevino, Rolando Vargas, Juanita Ramirez, and Karleigh Bybee), and a 62-month sentence does not create a disparity.  Mr. Trevino's case is still pending with a court date in October.  Mr. Vargas was sentenced to 84 months.  However, Mr. Vargas had a prior Assault 1 conviction as well as other pending felonies.  In addition, Mr. Vargas was always named as one of the individuals who assaulted the victim and who initially approached the car.  Ms. Ramirez' case was recently dismissed on motion of the government.  Finally, Ms. Bybee's case is still pending, although it does involve a charge of Misprision of a Felony for driving the victim to the scene and driving individuals away from the scene after the incident.

## V.  CONCLUSION

Based on the foregoing, Mr. Navarrete requests that the Court sentence him to 62 months of incarceration followed by the agreed three-year term of supervised release. Such a sentence adequately reflects the circumstances of the charged conduct as well as considers Mr. Navarrete's personal circumstances.  Such a sentence would also accomplish the stated goals of 18 U.S.C. § 3553(a).

Additionally, it is requested that Mr. Navarrete be given a recommendation for placement at Sheridan Correctional Institution in Oregon to be close to family, and that it be recommended that he participate in any available drug offender programs, such as the RDAP program.  Mr. Navarrete is aware that the circumstances of this case may prohibit any benefit to his release date, but nonetheless, he wishes to benefit from those programs.

Finally, it is requested that he be given credit for the time served in federal custody as well as consideration of the time he spent in state custody on this matter.  He first appeared in federal custody on December 4, 2019, although he was incarcerated from September 16, 2019, to October 21, 2019, when this matter was being handled on the state level.

DEFENDANT'S SENTENCING
MEMORANDUM                                              7

RESPECTFULLY SUBMITTED this 30th day of August, 2021.

_____s/ Troy J. Lee_____
Troy J. Lee (WSBA #30527)
Attorney for Defendant
Lee & Associates
117 N. 3rd St #201
Yakima, WA  98901
(509) 452-6235
Fax:  (509) 452-2518

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2021, I electronically filed the Defendant's Sentencing Memorandum under seal with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:  Patrick Cashman, Assistant United States Attorney.

s/ Troy J. Lee
Troy J. Lee
Attorney for Defendant
LEE & ASSOCIATES
117 N. 3rd St #201
Yakima, WA  98901
(509) 452-6235
Fax:  (509) 452-2518